Mr. Mierski, would you proceed please? Thank you, Your Honor, and may it please the Court. My name is Sean Mierski, and I'm here on behalf of Mr. Obando. The question in this case is whether the phrase, any civil action in the Equal Access to Justice Act, encompasses habeas petitions challenging the lawfulness of a civil detention. Every court of appeals to consider the question directly has held that the answer is yes. The question today is whether this court will side with its sister circuits or instead hold that a civil proceeding challenging civil detention in conjunction with civil immigration proceedings does not constitute a civil action. I'd like to start, if I may, with the government's argument that O'Brien controls the outcome in this case. That's incorrect, and I think the Second Circuit's decision in vacuo helps explain why. The Second Circuit in vacuo was positioned identically to the way that this court is positioned. It was considering a prior precedent, Boudin, which used at times very expensive, expansive language, about whether any civil action within the meaning of aegis applied to habeas proceedings. But the Second Circuit rightly realized that its precedent was solely limited to what we refer to as criminal habeas petitions, that is to say, habeas petitions challenging some aspect of underlying criminal detention. And the Second Circuit, looking at the question of non-criminal habeas detention, and specifically an immigration habeas case like the one here, concluded that it was a materially different instance and not controlled by the prior decision. And the same thing is true here, in fact, on steroids. O'Brien, by its very terms, expressly distinguished immigration habeas cases. It said that they were, and I quote, readily distinguishable. And so it's hard for me to understand why the government believes that in this particular case, O'Brien nevertheless controls. And we don't know what the government makes of that language in O'Brien because nowhere in their brief do they actually address it. Instead, they suggest that the reasoning of O'Brien somehow controls the outcome in this case. But the opposite is true. If you look at O'Brien's reasoning, it makes clear that the reason it held that a criminal habeas petition does not unambiguously qualify as a civil action is because of the nature of the underlying detention. That is the criminal detention. Counsel, can I stop you for a second? I understand the argument. And we can debate about whether the discussion of those two cases is really a limitation on the holding. But I want to ask the sort of like maybe more fundamental question, which I think is that if you accept O'Brien, what I'm having trouble with is understanding how we can conclude that civil action, whether it includes habeas or not, turns on the underlying facts of the habeas action instead of the nature of the habeas action here. I mean, all habeas actions by their natures are attacks on the legality of detention. And the line you're trying to draw, as I understand it, is the underlying facts. Is the detention civil or is the detention criminal? But that's not the nature of the action. The nature of the action is the attack on the legality of a detention of one type or the other. And what I'm having trouble getting my head around is how a statute's same use of the word civil action, somehow it means something different depending on what the underlying facts are as opposed to the nature of the action itself. Does that make sense? And can you help me understand how it is that the same language means something different when the facts underlying the action are different? Sure. And I think it's worth noting that, you know, there's a strong argument in favor of the idea that O'Brien, in some sense, was wrongly decided. And that totally get that. But I'm but I can't do anything about that. It's that O'Brien is correct for my question. Absolutely. And I think the way to understand O'Brien is to basically say that that by their nature, habeas proceedings are civil. And what happened in O'Brien is that the habeas case concerned an underlying criminal detention. And O'Brien concluded that that on its own was enough to turn it into something that it called a hybrid action. That logic applied here does not in any way lead to the same outcome as O'Brien, because, of course, the underlying proceed. I understand that. But my point is a more fundamental one. Right. The words civil action means something. Right. And what you're trying to tell us in order to distinguish O'Brien, I understand why you're trying to do it, but you're trying to tell us that the word civil action means something different depending on the underlying facts as opposed to the type of action. And that's the challenge. I understand the logic and reasoning that you want to talk about O'Brien. But the fundamental problem I've got is you've got the same words, civil action. And what I can't figure out is how that should be different. Whatever it means, how it can be different in a scenario where the type of action that is habeas is the same, but the facts in one case are criminal and the facts in another case are are civil. I understand the reasoning of O'Brien. How can I read those words to mean something different based on the underlying facts? So two points on that, Your Honor. The first is that I think habeas proceedings, especially the way O'Brien understood them, are in a lot of ways seen as an extension of the underlying proceedings. And so in the context of a criminal habeas action, the vehicle, of course, is still habeas. But it is in some sense seen as an extension of the underlying criminal proceedings and therefore doesn't constitute a civil action. In contrast, of course, here, the vehicle is still the same vehicle, but the underlying proceedings that it's acting as an extension of are civil proceedings. And that much, I think, is undisputed. The second point that I'd make is that the line that you're suggesting is the same line that not only O'Brien itself, I think, has suggested, but that is central to the reasoning of the Second Circuit and the Ninth Circuit and has been adopted in practice by every single, practically every single court of appeals to look at the question. And so for this court to to kind of go down the road that you're suggesting would require opening a clear circuit split with both the Second and Ninth Circuits and to deviate not only from other courts of appeals practice, but even from the practice of the Fourth Circuit itself. And, you know, and I should also mention on that front that the Supreme Court has itself often has allowed attorneys fees in the context of non-criminal habeas petitions. And I think part of part of the reason that that the line makes sense is because the Supreme Court has been a great pains to stress over and over and over again that habeas is a civil action. It is, as a vehicle, completely civil in nature. And so I understand your concern, but I think the answer is that O'Brien has to be understood as a as a narrow exception in some sense to that overall rule. The Supreme Court has never once held that habeas is anything but a civil action. And so the O'Brien approach of kind of seeing it as a hybrid vehicle has to be understood only in the context of the underlying criminal detention. It's also worth noting, Your Honor, that the concern about sort of looking past the vehicle to the underlying facts is much more of a problem for the government than it is for Mr. Obando. And the reason why that's the case is because the government in its brief proposes a test that seems to rely on whether the underlying proceedings have some what they call criminal aspects. Our line is relatively straightforward. That's their secondary argument. Their first argument, I understand, not to be that they do make that point. And you make a big deal of that in reply, but that's their secondary argument, right? Like if you don't agree, then this. So that's the straw man. I'm not sure that helps you on this point. Sure. But then on this specific point, I mean, the I think it's hard to understand how O'Brien could control here, at least as a matter of its holding when it by its terms distinguishes habeas cases. And that I just ask that one more. And then I apologize, Judge Keenan, I'll I'll try to be quiet or at least I'll do my best. So I understand you take the two cases that O'Brien distinguishes and say that that's a limitation. But when I read O'Brien in every instance, right, it says the holding as being a habeas proceeding without any limitation in the very first sentence. That's what the question is about. Right. And it gives an answer in the last paragraph. It's about a habeas proceeding, not a specific type of habeas proceeding, not one with the facts or this way or that way. It gives a broad rule. It could have given a narrow rule. I understand that it could have, but it didn't. And when it chooses to adopt, this is a little bit of a question of the scope of a holding question. How do I understand when they give a broad rule and even if they could have adopted a narrow and they didn't like the language that they use is a habeas proceeding. Right. And not a habeas proceeding where the underlying facts are criminal in nature. Sure. But three points on that, Your Honor. The first is I think that the approach this court should take is the same one that the Second Circuit took in vacuo, where I think the case was even more compelling for the argument that you were making. Boudin, by its terms, didn't even distinguish immigration cases. It simply talked about habeas actions broadly. And we, of course, concede that the language in O'Brien is quite expansive. But I think the fact that O'Brien at the end of its opinion goes expressly out of its way to say that the rule in the Second and Ninth Circuit is different tells you everything you need to know about whether O'Brien can possibly control in a case like this one, which, as the government concedes, is like those other cases. Mr. Raskin, though, it seems to me that you're giving away some of the language of O'Brien that you could be relying on. Let me direct your attention to page 505. The middle of the first left-hand column in my report, which says that to the extent that a habeas proceeding reviews a criminal punishment with the potential of overturning it, the habeas proceeding necessarily assumes criminal nature. And then went on to talk about why that was the case. And the court analogized the habeas proceeding and its relationship to the underlying matter, for instance, with a declaratory judgment. And said that to the extent that a declaratory judgment takes on aspects of the underlying case, the criminal effect of this case is what's controlling. Now, I'm not quoting that last part. That's my paraphrase. It seems to me that you're, you know, why isn't this helpful to your case and why haven't you talked about it? Well, we absolutely agree, Your Honor, that it's helpful to my case. And in fact, that was going to be my second point to Judge Richardson. You know, that that particular quote can be multiplied several times across O'Brien. It's true that O'Brien talks about habeas proceedings generally. But when it starts actually getting into the reasoning over and over and over again, it makes clear that it's talking about criminal habeas proceedings. I mean, the word criminal or a derivation of it is used 24 times in O'Brien. Just above that quote, Your Honor, O'Brien talks about habeas proceedings being neither a wholly criminal nor a wholly civil action, but rather a hybrid action that is unique category unto itself. Of course, that that entire reasoning doesn't apply to our case where there is nothing criminal at all about it. And Judge Richardson, I think one of the key points here is that to the extent that the suggestion is that O'Brien's holding somehow binds this court, it would be awfully strange to come to that conclusion by having to first reject O'Brien's reason. I mean, O'Brien's reasoning, I think, as for the reasons Judge Keenan mentioned and as you know, as we laid out in our brief, is very clear in pointing out that it is strictly talking about the fact that there are underlying criminal detention that makes the habeas vehicle into something less than or different than a civil action. OK, but I mean, the problem is that when he talks about the Sotelo, Aguayo and Hill case, he says, yeah, those are distinguishable, but regardless, we disagree with them. I mean, you know, that's the regardless, you know, to the extent that and you want to make a lot out of that, but to the extent that there's a difference here, we reject it. And so sorry, the screen's just moved. I thought we lost track of it. It seems like to me you're putting a lot on this idea when, in fact, the ruling that the court adopts is a broad one, which is a habeas action, not limited to it. Agreed it talks about different natures of actions in describing it. And it says, you know, it's just Keenan recognizes that where there's criminal, it takes on some aspects of criminal. And then it goes on further in that same paragraph and says when it's civil, it has both. It's also has some civil aspect. Right. And talking about the whatever is the Tom Tom decision. But at the end of the day, yes, that's true. But the whole thing is a habeas proceedings. Respectfully, Your Honor, I'd like to push back on that last point and then make a specific point about the court's language about Sotelo, Akihe and Hill. On your broad point, the court's holding is not, I think, necessarily what the exact words that the court used. I mean, Chief Justice Marshall's, you know, famous point in Coen's versus Virginia tells us that general expressions don't control in a case like this. And so that calling that the ruling or the holding, I think, would be a mistake. Even if O'Brien hadn't expressly said that that was that these cases are readily distinguishable. But turning to the to the line that you mentioned on page 508. As you know, we do think that that's dicta. I mean, it's expressly set up with the phrase to the extent that. But I think there's actually a second and arguably more important point, which is that the court was saying that to the extent we have to choose between two one size fits all rules. Namely that either all habeas proceedings count as civil action or that none do. We would favor the latter. And whether or not that's right, that's not the decision before this court. The decision before this court is simply whether a non-criminal habeas action should be treated as anything other than the civil action that it indisputably is. Mr. Mirsky, I think we've got to get to the question that I think is and I am very sympathetic to your point of view. I'll tell you right up front. But the thing that makes your case a potential loser, at least from my point of view, and I think you need to address is the issue of the waiver of sovereign immunity that we have to find in this case. How do we find that? It's got to be more than just all civil actions. How do we find that? Absolutely, Your Honor. So essentially there's two different ways to do this. The Supreme Court has clarified in recent years that the sovereign immunity canon, at least as it sort of applies to this case, is a rule of thumb that essentially acts as a tiebreaker. When after the court has applied every other tool of statutory construction, some ambiguity still exists in the statute. And so in that respect, it's akin, I think, to the rule of lenity or something like that. And I want to be clear because there are really two different sovereign immunity canons, and one of them I think remains considerably stronger than the one that's at issue in this case. There is still a very strong kind of clear statement rule as to whether the government has waived its sovereign immunity in the first place. And we're not trying to dispute that the standard on that is any different or, you know, how that applies because that's not relevant here. The EJ abides by its very terms, waives the government's immunity, and I don't think anyone disputes that. The only issue in this case is how do we read the scope of the waiver? And as we suggest in our brief, since Richland in 2008 and follow on cases from the Supreme Court, it's become very clear that— Can I interrupt you just a sec? This is Judge Tractor. Doesn't the waiver of sovereign immunity have to be unequivocal? Yes, Your Honor. I didn't hear you use that term. Well, yes, Your Honor, but only as to whether there is a waiver in the first place, not as to the scope of the waiver. And that's a pretty key distinction because in this case we're only talking about the latter. And so you're right that the unequivocal rule does apply, but not to this case because there is a waiver and no one disputes that there is a waiver. And that's, I think, a fairly key point to understanding why in this particular case the canon is only a statutory rule of construction in the same way as it was in Richland. I mean, O'Brien doesn't read it that way. I mean, I understand you sort of look at that a little differently, but O'Brien, one might say, takes a robust view of the canon. And so, I mean, the problem I'm getting with is, you know, if we're on a clean slate, you have an argument. But given O'Brien gives such weight to that in this very question, why am I supposed to ignore that based on what I gather you're saying is sort of an implication from the Supreme Court that is maybe not as strong as it once was? Well, that's right, Your Honor. And it's worth noting that Richland in these follow-on cases post-dated O'Brien. So to the extent that O'Brien did apply a more robust version of the canon, I don't think there's any particular reason to think that this court is still bound by that, especially because that I don't think is in any way part of its core holding. But to Judge Kenan's earlier point, I mean, I think first that there is no ambiguity here in the phrase. And second, to the extent there is any ambiguity in the phrase alone, I think that ambiguity is amply resolved by the act's context, legislative history, and purpose. I see that I'm well over my time, but if I can briefly just make one point on that. The government in the course of its brief does not give a single indicia of congressional intent to suggest that as of 1966, when the phrase any civil action was first inserted into the aegis predecessor statute, that it meant anything other than a capacious reading that includes non-criminal habeas actions. And so given that, I just don't understand how this court on the phrase alone could even say that it was ambiguous when the government has put in essentially no argument as to why it would be. But again, even to the extent that there might be some sort of argument there, I think it would be resolved by the completely one-way effect of the act's context, legislative history, and purpose. All right. Thank you, Mr. Mirsky. You'll have some rebuttal time left as well. We'd like Mr. Robbins now. Can everybody hear me okay? Yes. May it please the court. I'm Jonathan Robbins here on behalf of William Barr, the United States Attorney General. Good afternoon to everyone. In 2005, this court in O'Brien v. Moore expressly held, quote, the aegis waiver of sovereign immunity to awards of attorney's fees does not extend to habeas corpus proceedings. The district judge in this case correctly applied that holding to this case because this petition for review arises from the petitioner's habeas corpus proceedings. Now, of course, this case turns largely on whether you agree with the district judge and find that O'Brien is controlling to the instant matter. And given that that is the case, I think it's worth pointing out exactly what the concept of stare decisis includes. Because the concept of stare decisis doesn't just simply mean that the court adheres to a prior holding of the court. The court is supposed to adhere to the mode of analysis that got the court to that decision. The court is supposed to adhere to the explications of law underpinning the decision. And when you understand stare decisis in that context, it becomes clear that the arguments that the petitioner is making in this case simply cannot be reconciled with the reasoning and rationale of the court in O'Brien. So as Judge Richardson alluded to in his discussion with my colleague, the court has already held that the term civil action in this precise statute is ambiguous. So petitioner's arguments with respect to the notion that the statute isn't ambiguous are expressly foreclosed by precedent. He simply can't get away from the reasoning of the court from that decision. Okay. Well, Mr. Robbins, if I could ask you, it seems to me that you could make your argument that the court in O'Brien reserved the issue of whether these immigration cases, behaviorist cases are civil in nature because at the bottom of 507, the court, when it deals with in Ray Hill, simply says O'Brien circumstances are readily distinguishable from these immigration cases. So isn't it fair reading of that, that O'Brien's just saying we're not talking about immigration cases. That's not what we have in front of us. Well, Your Honor, I would agree with you. Why isn't it a fair reading that they left that for the next day when that is in front of the court? Because the court didn't stop there, Your Honor. I agree with you that it is true that the court initially distinguished the cases. And I'll get to that in a second because that distinguishing characteristic actually supports the government's argument. But then it also went on to say that it found the cases unpersuasive. In fact, it cited, for example, to the Ninth Circuit's decision in Hill as an example of a case which exhibited, quote, spotty adherence to the waiver of sovereign immunity. So I think it's clear from the decision that the O'Brien court disapproved of the reasoning from those cases. But getting to Your Honor's point about distinguishing the cases, I would ask the court to take a very close look at how the court distinguished those cases. Because what the court did is it distinguished the substance of the remedy being sought in those cases. In the Hill case, for example, in the Ninth Circuit, the individual in that case wasn't using habeas as a challenge to custody. They were using habeas as a challenge to a larger immigration policy. It's a very dated case, but the noncitizen in that case was attempting to challenge the government's exclusion policy for somebody who had made an admission of homosexuality at the border. A very old case, but it didn't involve custody. And the court in O'Brien distinguished that case by pointing out O'Brien's case is different. His case does challenge custody. And that's exactly what we have here, because petition in this case is challenging custody. So to the extent that the court distinguished the cases at all, one, it went on to also disapprove of the cases. But two, that distinguishing characteristic supports the government's argument here, because here we have the similar challenge to the legality of detention that O'Brien was making. So I don't think— Yes. What do we do with the footnote in Schlinger, where the Supreme Court says in Schlinger, the Supreme Court's decision where they describe what nationwide service of process is for a civil action. And the court there says, in essence, a civil action does not include a habeas action. And that habeas action was a civil habeas action. It was involving a soldier, if my recollection holds. But it was not a criminal action. And the court there says that in that context, a civil action did not include that type of civil habeas corpus action. And so to the extent that we thought O'Brien left that door open, should we read Schlinger as closing that door and telling us at a bare minimum that a civil action is ambiguous? And that at least in that statute, that it did not include a civil habeas corpus action? We would certainly argue that, Your Honor. We've cited, too, a number of different Supreme Court decisions that have refused to treat the statutory term civil action as encompassing habeas. Schlinger is certainly one of them. But I would dispute the notion that O'Brien leaves the question open. One of the things to remember here is that when you're talking about habeas actions, yes, there are some habeas actions that will lean more civil, and there are some habeas actions that will lean more criminal. That's the nature of the hybrid action. But what O'Brien said is that when you look at the entire scope of habeas actions, too many of them function as a hybrid type of claim to conclude that Congress intended for each to be applicable to them. So it's not that you could look at one specific type of habeas case and say, well, that one really leans civil. You're supposed to look at all of the habeas actions to determine do they differ in function significantly enough such that we can't evince an unequivocal intent from Congress that each was intended to apply to them. So Schlinger is one example of that, sure. But I think there's a host of examples. And particularly, O'Brien distinguished the cases in Hill and Sotelo-Akije. One of the things that's interesting about those cases is they're not cases you can bring anymore today. Those cases, as I mentioned before, were attacks on larger policy issues. But you can't bring those type of claims today. Congress repealed that in, I think it was in EPA. Those types of claims can't be brought in habeas actions anymore. The only type of habeas actions you can bring in immigration proceedings now are challenges to custody. That makes them virtually identical to the criminal type of habeas cases that we're dealing with here. So that's just another reason, I think, that we simply can't evince the required intent from Congress that they would have wanted each to apply in habeas actions. They specifically removed some of the larger policy questions from habeas. And so Petitioner's argument that the purpose of EJIA is to incentivize this type of challenge to larger policy questions, I think, falls by the wayside, given that you can't bring those types of claims anymore in any of these contexts. I do want to address Petitioner's argument about the Bakio case in the Second Circuit, because certainly I think we would all agree that's the decision that most supports its position. But I would respectfully reject the notion that this court is in the same position as the Bakio court. The Second Circuit in the Bakio court was not in the same position as this case was in O'Brien, because the court in Booten, in its prior case Booten, where it found that EJIA was not applicable in the criminal habeas context, didn't address anything about immigration. In fact, the Bakio court was very careful to say, we didn't mention anything about immigration-related habeas in that context. That's not the case from this court in O'Brien. This court in O'Brien was well aware that other cases had refused to extend that holding to the immigration context. And yet, as Your Honor noted, it still used that broad language of saying a habeas corpus proceeding. The court could very well have done what the other courts did and said, we're going to only decide the criminal context here today, and we're not going to address the civil context or the immigration context. It didn't do that. It was aware that other circuits had made this distinction and refused to make the same distinction. That is why the district judge in this case relied on that case as controlling. Because he specifically noted, this court in O'Brien did not make the same distinction that it was aware that other courts had made in those other cases. There's, of course, our secondary argument that these cases are hybrid. We've studied a lot of law, again, a lot of Supreme Court law and a lot of circuit courts law, which have recognized these habeas claims as hybrid actions. And we're talking today about immigration habeas versus criminal habeas. But that's really an artificial distinction that doesn't find much support. The Supreme Court has said that the statute controlling both immigration-related habeas claims and criminal habeas claims is the same statute. They both have the same legal standards. They both have the same legal rule. They are the same proceedings. Petitioner is trying to make the argument that because it stems from somewhere else, that that makes the nature of the proceeding itself different. And I certainly think that where a case stems from can influence the nature of habeas proceedings. I think it can contribute to it. But that doesn't change the fact that the proceedings themselves are the same. So just by way of illustration, the Supreme Court has held that the criminal standard of review is applicable in habeas claims. Well, that holds true whether it's a criminal habeas claim or an immigration habeas claim. So that's getting back to what the court said in O'Brien about the function of habeas claims. The way they function differ across the board depending on what kind of situations you have. And so, yes, look, there are immigration cases that will certainly maybe lean more civil than certain criminal habeas claims. But the fact remains is that in these cases, the individual is challenging the legality of detention. That implicates far more than mere civil liability.  How is this a hybrid civil criminal case? There's no underlying criminal detention. There is. It was Petitioner's criminal conduct that subjected him to the detention in this case. The detention is not criminal. It just goes to the nature of his prior record. The issue is deportation and detention under our immigration laws. How is that even remotely criminal? Right, but the mandatory detention, Congress has mandated detention for individuals who have been convicted of certain crimes. So the basis of detention, you're right, it may be administrative in nature, but it's based on criminal conduct. I think that at least turns in part on a hybrid analysis, especially because in the immigration context, if your honors are familiar at all, a lot of the ways we analyze the criminal statutes in most cases mirror what we do in the criminal context. If your honors are at all familiar with the modified categorical approach and the categorical approach and those analyses, it's the same in the immigration context. But the detention itself is a civil detention. I agree, Your Honor. I agree, Your Honor, but Congress has mandated that people with certain convictions be subject to mandatory detention. That is what was happening in this case. So it was based on underlying criminal conduct, which is the same as was in O'Brien. Yes. Counsel, your colleague suggested after the Richland case that we should look at the sovereign immunity canon differently, at least with respect to the scope of that. And certainly there's some commentators that have said that, but do you agree with that? Or do you take the position that Richland is just a case where the Supreme Court said that there wasn't ambiguity, and I think the language is used, to the extent there's ambiguity, that stare decisis answered the question. And so that is what resolved the sovereign immunity canon and not some sea change in the way that we think about the unequivocal waiver that's required. But where do you come out on that debate? Well, we think Richland is certainly distinguishable for the basis which you just said, which is that the court did not find that the statute was ambiguous. But I would refer, Your Honor, specifically to specific language from the Supreme Court on the issue of waiver of sovereign immunity, because Richland does not overturn this holding by the Supreme Court from the Lane case and citing from Norwich Village. A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text. The unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text. That has not been overturned by the Supreme Court. And so Richland, yes, was dealing with a statute that was not ambiguous. That is simply not what we're dealing with here, because the court has already held that the statute in question is ambiguous. And when it's ambiguous, the statute is supposed to be strictly construed in favor of the sovereign. And the key word there is strictly. That's why the vacuo decision from the Second Circuit is really unpersuasive, in my view, because the court recognizes that the sovereign immunity waiver applies in a footnote, and then it proceeds to look at the legislative history. Well, the Supreme Court expressly said that we're not supposed to do that. We're not supposed to use the legislative history to replace what should be unequivocal from the statutory text. And that's where Petitioner's argument really falters, because what he's asking you to do is to hold that you've already held that the statute is ambiguous with respect to, at any minimum, criminal habeas. And now you're supposed to say that the same statute evinces an unequivocal intent, that Congress intended to have this apply to any related proceedings. Well, how can that be? Because the reasoning of O'Brien was that they examined congressional intent and said, we can't discern congressional intent with respect to habeas. Well, you would think the court would have said something to the effect of, well, Congress had said something to immigration-related matters, but it hasn't said anything to criminal immigration matters. It didn't do that. It just said that there was no intent at all. Mr. Robbins, it seems to me, though, that your argument is looking at it through kind of glasses of bifurcation. I mean, isn't really the question here for us to look at the statutory text and determine whether Congress unambiguously waived immunity as to purely civil cases? In other words, it seems like your entire argument is presupposing that there are – is relying entirely on distinctions in types of habeas. And why don't we just look at whether this purely civil case, there's nothing – and I know you're saying you've got to look at this prior criminal record, but people aren't treated differently based on their – I mean, in terms of detention. Once they're detained, they're civilly detained under the immigration laws. They're not criminally detained. And so why don't we look, determine whether Congress was unambiguously waiving sovereign immunity in terms of purely civil cases, that is, where the underlying detention is immigration rather than criminal? Well, I think you do look at the statutory text to determine whether there's an unambiguous intent of Congress to do that. But the problem is, is that the court has already held that this term is ambiguous with respect to habeas proceedings. And habeas proceedings, whether they stem from civil proceedings or criminal proceedings, are unique unto themselves. They are – they're the same proceedings in criminal – in immigration matters. And that's the point we're making. So I would quibble a little bit respectfully, Your Honor, with respect to the notion that these habeas proceedings are purely civil. They are – the habeas proceedings are unique in nature. And we've cited a plethora of cases, Supreme Court cases, courts of appeals cases. I mean, the Supreme Court has expressly said, look, we've referred to this as civil in the past. The O'Brien court readily acknowledged that. But when push has come to shove, the Supreme Court has repeatedly refused to treat habeas actions as civil in nature. Harris against Nelson, when the Supreme Court expressly said, look, the civil label is gross and inexact. These proceedings are unique. And so I would quibble with Your Honor's suggestion that habeas proceedings, simply because they stem from an immigration civil matter, makes the proceedings themselves somehow also civil. I think that's not what the Supreme Court has said about habeas actions when push has come to shove. Certainly, there is a plethora of case law that has loosely referred to them as civil, mostly because they're usually distinguishing these cases from criminal cases. But when push has come to shove and the Supreme Court has been forced to reckon with whether or not habeas is included in civil action, it has repeatedly refused to do so. So that would be my – I do think that in part – Yeah, let me just follow up with one last thing and then I'll cease and desist. When O'Brien was talking about any civil action and holding that it was ambiguous, it held it was ambiguous as to criminal-slash-civil hybrid cases. It wasn't ever talking about a case that – where the underlying detention was – and I don't think you've really answered that. Your Honor, I definitely agree with you that the Court did discuss that, but that's not all it discussed. As I mentioned before, it also disapproved of the reasoning from the cases which had applied EJ in the immigration context. It expressly disapproved of Hill as the case exhibited, quote, spotty adherence to the waiver of sovereign immunity. I don't see how you can read that as any way other than disapproving of what the Ninth Circuit did in Hill. I also would point out that it made a distinct – look, O'Brien Court was very much also concerned with looking to the substance of the remedy. And in doing so, when it distinguished the cases in the immigration context from the criminal context, it explained what the Ninth Circuit did in Hill and what the Second Circuit did in Sotelo-Akiche. The substance of the remedies in those cases did not involve custody. O'Brien's case is different because it does involve a challenge to custody. Well, that's exactly what we have here. So O'Brien's reasoning – I agree with you that it discussed that part of the hybrid nature was in part contributed to by the fact that often these cases stem from criminal proceedings. But it didn't say that the nature of the proceedings would change if they stemmed from a civil context. And when the court went on to address the immigration-related cases, it disapproved of them and it distinguished them in a way that supports the government's position. So I would – in answer to Your Honor's question, don't stop reading just to that one paragraph. There's a whole lot of analysis more from O'Brien that's readily applicable. And that really gets me to the larger theme here, which is it is the reasoning of the entire decision that is controlling here. That's why the district judge found that O'Brien was controlling. It wasn't just that it found that EJIL wasn't applicable to habeas proceedings and that a certainly broad language, which Your Honor has already noted, certainly seems to indicate – I think that broad language is telling in the fact that it knew other circuits had made the distinction that the petitioner is making to ask, and it refused to make that distinction. That was what – if you read the district judge's decision in this case, that is the reason that he determined that O'Brien was controlling. That's why he relied on the decision. So I see that I just ran out of time. Do Your Honors have any further questions? And we'll end that case, and thank you very much for your time. I appreciate it. Okay, thank you, Mr. Robbins. Let's have Mr. Mirsky wrap it up for us. Thank you, Your Honor, and apologies. Wouldn't be an argument if somebody didn't do that once. I had to finish it out the right way. Just three points on rebuttal, Your Honor. First, I'd like to pick up where opposing counsel left off. I think saying that this court is bound by O'Brien's reasoning is wrong or misleading at three different levels. First, stare decisis counsel's deference to past mistakes. It provides no justification for making new ones. And the Supreme Court has repeatedly refused to extend reasoning that it disagrees with to the extent that it's no longer applicable. Second, I think it's just worth noting that it's an extremely odd position for the government to take. I mean, the government, in the course of most of his oral argument, has not really defended the underlying reasoning of O'Brien and has not really argued why non-criminal habeas petitions should fit within the context of any civil action. Instead, it's mostly just saying follow O'Brien. But if O'Brien's wrong, I mean, that, I think, just illustrates the sort of inadequacy of the government's argument. And then, of course, the final point is. Wouldn't we also have to say that Schlanger is wrong? I mean, Schlanger's a habeas case, but civil in nature, right? This is a soldier who says he's being held against orders or whatever the facts were. It's a civil habeas case, except there's a different kind. It's a habeas action in which the underlying facts are civil. And the Supreme Court there says that is not a civil action for purposes of this statute, right? I mean, to me, that seems maybe even more powerful than O'Brien when we sort of get to the question of, is it? And it certainly is on the ambiguity point, because in Schlanger, the court then turns to legislative history and says, we don't get anything from legislative history, and we know that they only are looking at legislative history if there's ambiguity. Yeah, so Judge Richardson, a few responses to that. The first is that Judge Douglas' cryptic footnote, I mean, of course, is dicta. Going beyond that, I mean, what Judge Douglas actually did. We tend to follow the Supreme Court's dicta. We may not follow our own dicta, but we tend to follow the Supreme Court's dicta. Sure, but what Justice Douglas did is precisely what I think we're asking this court to do. Justice Douglas didn't say the phrase civil action is ambiguous. Justice Douglas looked at the legislative history and concluded, based on the legislative history, that for that particular statute, the phrase civil action did not encompass ambiguous proceedings. No, but what he says is, and I just had it, but I lost it. He just says the legislative history doesn't give us a hint one way or the other, and so therefore it's excluded. That's not saying the legislative history dictates it. It's saying the opposite. Respectfully, Your Honor, what he says is that the legislative history does not suggest that the phrase was meant to encompass ambiguous petitions. And so I think the way we at least read that. Which means that the language on its face does not, and nothing in the legislative history puts it in. Well, respectfully, I don't think that's clear. I think the question that Justice Douglas was looking for is what was Congress's intent. But even if you're right, Your Honor, I think all that shows is that, number one, a case that postdates the use of the phrase any civil action, so therefore I don't think could have affected Congress's understanding of the statute, found in that particular instance that the indicators of congressional intent went one way. And we're asking this court simply to look at the exact same indicators of congressional intent. The legislative history here in this particular case is very clear, right? I mean, the government expressly represented to Congress that the phrase any civil action would cover cases like this one. And so to the extent even that you're right. Then we get back to the canon problem, and I understand your original argument. But then we're saying, based on legislative history, we're finding this unequivocal waiver? Not just legislative history, Your Honor. I think it's also purpose. I think it's precedent. I think it's importantly the use of the word any before the phrase civil action, which was not present in the Schlanger, in the relevant statute in Schlanger, but tells this court that the broader meaning, whatever the broadest meaning of civil action, is the one that Congress meant to enact in Aja. And so I think all that put together, along with the Supreme Court's unbroken record of saying that habeas proceedings are civil in nature, is everything that this court needs to know before it even gets to the sovereign immunity canon. And Judge Keenan, to that point, I mean, footnote 10 in vacuo, I think, really lays out the proper analysis of how to approach the sovereign immunity question in this in this case. The question is not how can we read the statute as narrowly as possible? The question is, applying all the tools of statutory construction, do we have an answer or is it still ambiguous after all that? And respectfully, I just don't think that after applying those canons here that there's any way to come out other than to rule, as every other court of appeals to answer the question has ruled, that non-criminal habeas actions are, in fact, civil actions within the meaning of the Aja. Thank you, Your Honor. All right. Thank you very much, Ms. Mierski. And the court would like to thank both Mr. Mierski and Mr. Robbins. You've done an excellent job today, both of you. And you've also assisted us in making this argument technologically possible. And for that, we're very grateful as well. So thank you very much for your professionalism and for your good attention to your respective positions. At this point in time, I'll ask the clerk to adjourn court.
judges: Barbara Milano Keenan, Julius N. Richardson, William B. Traxler Jr.